Argued June 20, affirmed September 4, petition for rehearing denied by opinion September 28, 1973, petition for review denied January 3, 1974

STATE OF OREGON, *Respondent, v.* ROBERT VERNON BOJORCAS (No. 72-111), *Appellant.*

STATE OF OREGON, *Respondent, v.* FLOYD BUD PARAZOO (No. 72-112), *Appellant.*

STATE OF OREGON, *Respondent, v.* ALLEN KEITH NELSON (No. 72-110), *Appellant.*

STATE OF OREGON, *Respondent, v.* ROBERT ALLEN HICKS (No. 72-113), *Appellant.*

513 P2d 813
514 P2d 566

*Daniel H. Israel,* Native American Rights Fund, Boulder, Colorado, argued the cause for appellants. With him on the briefs were L. A. Aschenbrenner and Marmaduke, Aschenbrenner, Merten & Saltveit, Portland; and Hal F. Coe, Klamath Falls.

*John W. Osburn,* Solicitor General, Salem, argued the cause for respondent. With him on the briefs was Lee Johnson, Attorney General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and THORNTON, Judges.

FOLEY, J.

Defendants were charged with the crime of illegal possession of deer in violation of ORS 498.030. The parties stipulated (1) that defendants were "withdrawn members" of the Klamath Tribe of Indians and (2) that they were in possession of deer which they had killed on former reservation land, as charged in the complaint. Defendants were convicted and fined and have appealed their convictions, contending that they have certain treaty rights which exempt them from state game laws.

It is necessary to review briefly the history of

the relationship between the Klamath Tribe of Indians and the United States Government in order to gain a perspective on the present controversy. The treaty between the United States and the Klamath and Modoc Tribes and Yahooskin Band of Snake Indians was concluded on October 14, 1864, and proclaimed on February 17, 1870. 16 Stat 707. That treaty guaranteed to the Indian tribes, among other things, "* * * the exclusive right of taking fish in the streams and lakes, included in said reservation, and of gathering edible roots, seeds, and berries within its limits * * *" and that language has been interpreted to include the right to hunt and trap on the reservation free from state regulation. *Klamath & Modoc Tribes, Etc. v. Maison,* 139 F Supp 634 (D Or 1956).

In 1961 the Klamath Termination Act, 25 USC §§ 564-564w became effective. The purpose of the Termination Act, as set forth in § 564, is to provide for

"* * * the termination of Federal supervision over the trust and restricted property of the Klamath Tribe of Indians consisting of the Klamath and Modoc Tribes and the Yahooskin Band of Snake Indians, and of the individual members thereof, for the disposition of federally owned property acquired or withdrawn for the administration of the affairs of said Indians, and for a termination of Federal services furnished such Indians because of their status as Indians."

In order to accomplish this end, a procedure was established by which each member of the tribe was given an opportunity to elect to withdraw from the tribe and have his interest in tribal property converted into money and paid to him, or to remain in the tribe and participate in a tribal management plan prepared pursuant to the Act. 25 USC § 564d (a)(2). Four

hundred seventy three members of the tribe elected to remain in the tribe and their proportionate share of tribal property was transferred to a bank as trustee for the remaining members. One thousand six hundred sixty members of the tribe, on the other hand, elected to withdraw from the tribe and they received cash payments for their shares of tribal property. *See Klamath and Modoc Tribes v. Maison,* 338 F2d 620 (9th Cir 1964). Defendants in the cases at bar were among this latter group which elected to withdraw.

The Ninth Circuit Court of Appeals has held that the Klamath Termination Act terminated the tribe's hunting and trapping rights even though the Termination Act did not expressly mention those rights. *Klamath and Modoc Tribes v. Maison,* 338 F2d 620 (9th Cir 1964). Defendants argue that this holding has been effectively overruled by *Menominee Tribe v. United States,* 391 US 404, 88 S Ct 1705, 20 L Ed 2d 697 (1968), which held in a somewhat similar situation that tribal hunting and fishing rights guaranteed by treaty may be abrogated only by explicit legislation. Whatever may be the merits of that contention,[1] we do not reach it because we are not dealing in this case with the rights of either the Klamath Tribe or its members, but rather with the rights of those persons who have chosen to withdraw from the tribe.

Section 564e (c) of the Klamath Termination Act provides:

"Members of the tribe who receive the money value of their interests in tribal property shall

---

[1] We note that although the *Menominee Tribe* court was aware of the provisions of the Klamath Termination Act, see 391 US 404, 413, n 15, and 416, n 7, it did not mention the Ninth Circuit decision.

> thereupon cease to be members of the tribe: *Provided,* That nothing shall prevent them from sharing in the proceeds of tribal claims against the United States."

■ We interpret this section to mean that members of the Klamath Tribe who elected to take cash payment for their interest in tribal property ceased to be members of the tribe insofar as the Federal Government is concerned, with the single statutory exception of sharing in proceeds of tribal claims against the United States.[2] Such an interpretation is consistent with both the statement of legislative purpose quoted supra and § 564m (b) of the Termination Act which provides:

> "Nothing in sections 564 to 564w-1 of this title shall abrogate any fishing rights or privileges *of the tribe or the members thereof* enjoyed under Federal treaty." (Emphasis supplied.)

Reading § 564e (c) and § 564m (b) of the Termination Act *in pari materia,* it is clear that the Termination Act provides for different treatment of tribe members and non-members.

■ To say that § 564e (c) terminates tribal membership for those persons receiving cash payments is not equivalent, as defendants suggest, to saying that the Klamath Tribe cannot control its own membership for its own purposes. The tribe clearly retains that right. But when the issue becomes who shall be beneficiaries of federal treaties, Congress has the ultimate authority to determine tribal membership. *See* F. Cohen, Handbook of Federal Indian Law 98-100, and cases cited therein.

---

[2] The same conclusion was recently reached by the Oregon Federal District Court in Kimball v. Callahan, No. 73-155 (decided March 15, 1973).

Therefore, we conclude that whatever rights, if any, enrolled members of the Klamath and Modoc Tribes and Yahooskin Band of Snake Indians may retain to hunt on former reservation land, such rights do not extend to non-members, including defendants herein, and that defendants therefore enjoy no immunity from state game laws.

Affirmed.

### ON PETITION FOR REHEARING

On appellants' petition for rehearing filed September 13, affirmed September 4, 14 Or App 538, 513 P2d 813

Daniel H. Israel, Native American Rights Fund, Boulder, Colorado, for petition.

No appearance contra.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

FOLEY, J.

Defendants contend in their petition for rehearing that this court should have ruled explicitly on their argument that the stipulation upon which they were convicted was insufficient to support the convictions, since it did not negate the possibility that defendants were hunting upon the trust land with the permission of the remaining tribal members. That argument is based on the premise that the remaining tribal members retain hunting rights, and that their rights are assignable to persons who are not members of the tribe. The premise is erroneous.

As we noted in our prior opinion, the Ninth Circuit Court of Appeals has held that the remaining tribal members no longer have hunting and trapping rights on the former reservation land. *Klamath and Modoc Tribes v. Maison,* 338 F2d 620 (9th Cir 1964). On a matter of federal law, we feel that federal court opinions are entitled to considerable weight, and we therefore follow the Ninth Circuit holding. Since the remaining members of the Klamath Tribe retained no rights to hunt and trap themselves, they clearly had no such rights to assign.

Defendants argue that the Ninth Circuit opinion has been impliedly overruled by the United States Supreme Court's opinion in *Menominee Tribe v. United States,* 391 US 404, 88 S Ct 1705, 20 L Ed 2d

697 (1968), but both the treaty and the termination act involved in that case contained significantly different terms from those involved in the case at bar. In addition, as we noted in our prior opinion, the Supreme Court expressed no disapproval of the reasoning underlying the Ninth Circuit decision, despite the fact that it was aware of the terms of the Klamath Termination Act.

Petition for rehearing denied.